1  MICHAEL J. NADER, SBN 200425
   michael.nader@ogletree.com
2  ALEXANDRA ASTERLIN, SBN 221286
   alexandra.asterlin@ogletree.com
3  PAUL M. SMITH, SBN 306644
   paul.smith@ogletree.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  500 Capitol Mall, Suite 2500
   Sacramento, CA  95814
6  Telephone:    916-840-3150
   Facsimile:    916-840-3159
7
   Attorneys for Defendant
8  ROADSAFE TRAFFIC SYSTEMS, INC.

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12  VINCENT TURNER, an individual; on behalf    | Case No. _____
    of himself and all others similarly situated and
13  the general public,                          | **DEFENDANT ROADSAFE TRAFFIC
                                                 | SYSTEMS, INC.'S NOTICE OF
14              Plaintiffs,                       | REMOVAL OF STATE COURT ACTION
                                                 | TO FEDERAL COURT**
15         vs.
                                                 | [Filed concurrently with Civil Case Cover
16  ROADSAFE TRAFFIC SYSTEMS, INC., a            | Sheet; Defendant's Certificate of Interested
    Delaware corporation; and DOES 1 to 100,     | Parties and Corporate Disclosure Statement;
17  inclusive,                                    | Request for Judicial Notice; Declarations of
                                                 | Angela Izuel, Margaret E. Bennett, and
18              Defendants.                       | Alexandra M. Asterlin]

19                                               | Action Filed:    September 12, 2023
                                                 | Trial Date:      None Set
20

21  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**

22  **DISTRICT OF CALIFORNIA, PLAINTIFF VINCENT TURNER, AND HIS COUNSEL OF**

23  **RECORD**:

24         PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005

25  ("CAFA"), 28 U.S.C. sections 1332(d), 1453, and 1711, Defendant ROADSAFE TRAFFIC

26  SYSTEMS, INC. ("Defendant") hereby removes to the United States District Court for the

27  Northern District of California the above-captioned state court action, originally filed as Case

28

No. 23CV043674 in Alameda County Superior Court, State of California. Removal is proper on the following grounds:

## I.     TIMELINESS OF REMOVAL

1.     Plaintiff VINCENT TURNER ("Plaintiff") filed a putative Class Action Complaint against Defendant in Alameda County Superior Court, State of California, Case No. 23CV043674, on September 12, 2023 ("State Court Action").  Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings, and orders served on Defendant in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

2.     On October 5, 2023, Defendant received service of the Summons and Complaint through their registered agents for service of process. These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based. True and correct copies of these documents, along with all pleadings, process, and other documents Defendant received in this action are attached hereto as **Exhibit A**.

3.     On November 3, 2023, Defendant filed an Answer in the Alameda County Superior Court Action. A true and correct copy of the Answer is attached hereto as **Exhibit B.**

4.     The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris*, the Ninth Circuit held defendants have no obligation to investigate or develop additional information as to removability. *Id.* at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

5.     In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed *Harris*' holding "that a defendant does not have a duty of inquiry if the

initial pleading or other document is 'indeterminate' with respect to removability." *Roth* explained, "a defendant who has not lost the right to remove because of a failure to timely file...may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.* 1123. District courts have subsequently followed this Ninth Circuit precedent: "The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law." *Jakuttis v. Allstate Indem. Co.,* No. EDCV 15-0624 JGB (KKx), 2015 WL 3442083, at *4 (C.D. Cal. May 27, 2015). "Regardless of when [the defendant] learned the parties were diverse, their notice of removal was timely under 28 U.S.C. § 1446(b)(3) . . ." *Vigil v. Waste Connections, Inc*., No. 2:14-cv-02383-KJM-CKD, 2015 WL 627877, at *4 (E.D. Cal. Feb. 11, 2015). Thus, when the Complaint "does not reveal that the case is removable [under CAFA], the 30–day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.,* 742 F.3d 1234, 1238 (9th Cir. 2014)

6.      Here, it is evident that the $5 million amount in controversy threshold cannot be derived from the "four corners" of Plaintiff's Complaint. *See Harris v. Bankers Life and Casualty Co*., 425 F.3d 689, 694 (9th Cir. 2005) (holding notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings). The Complaint provides no substantive facts regarding the basis for Plaintiff's asserted damages. The Complaint does not state the number of workweeks at issue. The Complaint states, "it is estimated that the classes number greater than 100 individuals." (Complaint, ¶14.) Plaintiff does not allege his hourly rate of pay or provide any allegation specifying the amount of damages for any of his claims. Thus, an amount in controversy for CAFA removal cannot be reasonably derived from this information. *See, e.g., Zhao v. RelayRides, Inc.,* No. 17-cv-04099-JCS, 2017 WL 6336082, *12 (N.D. Cal. Dec. 12, 2017) (finding plaintiff's complaint "did not reveal on its face that the action was removable under CAFA" where it "contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either [the plaintiff's] damages or the damages of the class as a whole"); *Trahan v. U.S. Bank Nat'l Ass'n, No*. C 09–03111 JSW, 2014 WL 116606, *4 (N.D. Cal. Jan. 13, 2014) (finding documents were

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

indeterminate and did not trigger removal deadline where they "did not expressly state that the amount in controversy would exceed $5,000,000...and did not make any specific assertions about the amount of damages that might be available to the class or the value of injunctive relief").

7.      The Complaint does not provide readily ascertainable grounds for removal.

8.      As such, this Notice of Removal is timely filed.

**II.     SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL**

9.      Removal is proper pursuant to 28 U.S.C. sections 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *id.* § 1332(d).

10.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." *Id.* § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B).

11.     Plaintiff seeks to represent the following seven Classes:

**Class 1:**

All non-exempt hourly employees who worked for Defendants in California from 2019 to the date of judgment, who were not paid premium overtime and/or double time at the employee's regular rate of pay;

**Subclass 1:**

All non-exempt hourly employees who worked for Defendants in California from 2019 through the date of judgment, who were not paid the regular rate of pay for meal and rest period premiums;

**Class 2:**

All non-exempt hourly employees who worked for Defendants in California from 2019 through the date of judgment, who were not paid the minimum wage for all hours worked (Minimum Wage Class);

**Class 3:**

All non-exempt hourly employees who worked for Defendants in California and who worked at some point from 2019 through the present, who are no longer employed with Defendants and to whom Defendants willfully failed to pay all wages due upon separation from Defendants (Waiting Time Penalty Class);

**Class 4:**

All non-exempt hourly employees who worked for Defendants in California from 2019 to present who were not provided legally compliant meal periods (Meal Break Class);

**Class 5:**

All non-exempt hourly employees who worked for Defendants in California from 2019 to present who were not provided legally-compliant rest breaks (Rest Break Class);

**Class 6**

 All non-exempt hourly employees who worked for Defendants in California from 2022 to present who were provided a paystub (a.k.a wage statement) which failed to list all hours actually worked and wages owed (Pay Stub Class).

**Class 7:**

All non-exempt hourly employees who worked for Defendants in California from 2022 through the present who were not reimbursed for their necessary and reasonable business expenses (Reimbursement Class).

(Complaint, ¶14.)

12.    In the Complaint, Plaintiff alleges nine (9) causes of action against Defendant: (1) Violation of Business and Professions Code §§17200; (2) Violation of Labor Code §§204, 510, 1194, and 1198; (3) Failure to Pay Meal and Rest Break Premiums at the Regular Rate of Pay (Labor Code §226.7); (5) Failure to Provide and Maintain Accurate Wage Statements pursuant to Labor Code §226; (6) Failure to Provide Meal Periods (Lab. Code §226.7); (7) Failure to Provide

Rest Breaks (Labor Code §226.7); (8) Failure to Reimburse Expenses (Labor Code §2802); and (9) Violation of Labor Code §§2698-2699 (PAGA).

13.     Among other things, Plaintiff alleges putative class members are entitled to unpaid wages, meal and rest period premiums, unreimbursed business expenses, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Complaint, ¶¶37-46, 48-50, 52-53, 55-58, 60-64, 66-70, 72-74, and Prayer for Relief section.) More specifically, Plaintiff alleges the following: "Defendants have engaged in a pattern and practice of acts of unfair competition" (Complaint, ¶21); "Defendants…have engaged in the practice of paying their non-exempt employees, in a fashion that circumvents California's wage and hour laws (Complaint, ¶22); "Defendants…consistently administered a corporate policy regarding off-the-clock and on-call time…" (Complaint, ¶24); "This corporate policy and pattern of conduct is accomplished with advanced knowledge and designed intent to avoid paying non-exempt employees for all hours worked" (Complaint, ¶24);  "Defendants have willfully violated the Labor Code with respect to meeting the requirements of paying one (1) regular rate of pay and calculating overtime and double time on that regular rate" (Complaint, ¶41); "This corporate policy and pattern of conduct was/is accomplished with the advance knowledge and design of all Defendants herein" (Complaint, ¶42); "Plaintiffs and all others similarly situated routinely, regularly and customarily performed overtime work and/or work that they failed to be compensated at the appropriate hourly wage" (Complaint, ¶42); "Defendants… had a consistent and uniform policy, practice, and procedure of willfully failing to pay…all such non-exempt employees" (Complaint, ¶44); "Defendants have willfully failed to pay the earned and unpaid wages of such individuals" (Complaint, ¶44); "The pattern, practice and uniform administration of corporate policy regarding illegal employee compensation … is unlawful" (Complaint, ¶45); and "Defendants have a pattern, practice and uniform administration of corporate policy regarding failure to comply with the required provisions of Labor Code §226.7" (Complaint, ¶46).

14.     Here, Plaintiff makes allegations Defendant  "willfully," "knowingly and intentionally" "engaged in "ongoing unfair business practices" and  engaged in "consistent and uniform policy, practice, and procedure" of failing to pay minimum and overtime wages, failing to

1  provide compliant meal and rest breaks, failing to provide timely wages and final wages, failing to

2  reimburse expenses, and failing to provide compliant wage statements. (Complaint ¶¶21, 23, 41,

3  44, 45, 56.) However, Plaintiff makes no allegations to indicate any limit to the frequency of the

4  alleged violations. Thus, it is entirely reasonable for Defendant to assume up to a 100% violation

5  rate for each of Plaintiff's claims. *See, e.g., Rea*, 742 F.3d at 1239 (recognizing effect of company

6  declaration showing store managers expected to work 45-50 hours per week for amount-in-

7  controversy calculation on overtime claim); *Bryant v. NCR Corp.,* 284 F. Supp. 3d 1147, 1151

8  (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to the violation rates,

9  "assumption of a 100 percent violation rate may have been reasonable based on the allegations in

10 the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that

11 [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*,

12 No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding

13 "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not

14 qualify her allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff

15 does not assert or suggest an alternative violation rate on which the Court should rely.").

16     15.    Plaintiff further alleges Defendant "with advanced knowledge and design,"

17 "willfully," "knowingly," and "intentionally," violated the law. (Complaint, ¶¶24, 41, 42, 44, 56.)

18     16.    Removal of a class action under CAFA is proper if: (1) there are at least one-

19 hundred (100) members in the putative class; (2) there is minimal diversity between the parties,

20 such that at least one class member is a citizen of a state different from any Defendant; and (3) the

21 aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest

22 and costs. See 28 U.S.C. §§ 1332(d), 1441.

23     17.    Defendant denies any liability in this case, both as to Plaintiff's individual claims

24 and as to the claims he seeks to pursue on behalf of the putative class. However, solely for purposes

25 of the jurisdictional requirements for removal, the allegations in Plaintiff's Complaint and a

26 thorough analysis of Defendant's data demonstrates there is a putative class of more than one-

27 hundred (100) members and the alleged claims place in controversy are, in the aggregate, an

28 amount substantially exceeding five million dollars ($5,000,000). See *id.*, § 1332(d)(6).

1

**A.      The Proposed Class Consists of More Than One-Hundred (100) Members**

2      18.      Based on the allegations in the Complaint, this action satisfies CAFA's requirement

3  that the putative class contains at least one-hundred (100) members. See *id.* § 1332(d)(5)(B).

4      19.      Plaintiff proposes to represent seven classes of employees in this action. (Complaint,

5  ¶14.) Plaintiff further alleges, "it is estimated that the classes number greater than 100 individuals."

6  (Complaint, ¶14.) The putative classes consists of those who were and are employed by Defendant

7  in California at any time during the period of four (4) years prior to the filing of the Complaint.

8  (Declaration of Angela Izuel in Support of Defendant's Notice of Removal ("Izuel Decl.)), ¶7.)

9  Based on a review of the Defendant's business records, the putative class, as defined by Plaintiff's

10  Complaint, includes 394 putative class members.  (Izuel Decl., ¶7.)

11      20.      Although Defendant denies class treatment is appropriate, Plaintiff's proposed class,

12  as pled, and if certified, would easily consist of more than one-hundred (100) members.

13      **B.      Diversity of the Parties Exists**

14      21.      Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any

15  member of the putative class must be a citizen of a different state from any defendant. See 28

16  U.S.C. § 1332(d)(2)(A).  That is, the citizenship of at least one class member is diverse from the

17  citizenship of at least one defendant.  *Id.*

18      22.      A person is a citizen of the state in which he or he is domiciled. *Kantor v. Wellesley*

19  *Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of

20  his or his domicile. *Ayala v. Cox Auto., Inc*., No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at

21  *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th

22  Cir. 1994)). Plaintiff has alleged he worked for Defendant in the state of California. (Complaint,

23  ¶3.) Additionally, Plaintiff's personnel and wage records indicate he most recently lived in Nevada.

24  (Declaration of Margaret E. Bennett ("Bennett Decl".), ¶11) Plaintiff is therefore considered a

25  citizen of Nevada for purposes of removal under CAFA. See *Ayala*, 2016 WL 6561284, at *4.

26      23.      A corporation is a citizen of its state of incorporation and the state of its principal

27  place of business. 28 U.S.C. § 1332(c)(1).

28

24.     At the time this action commenced in state court and as remains today, Defendant ROADSAFE TRAFFIC SYSTEMS, INC. is organized under the laws of the State of Delaware. (Bennett Decl, ¶3.)

25.     The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. section 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination[.]" *The Hertz Corp. v. Friend, et al.*, 559 U.S. 77, 92–93 (2010).

26.     Defendant's business operations and executive and administrative functions are controlled by ROADSAFE TRAFFIC SYSTEMS, INC.'s corporate headquarters in Chicago, Illinois. (Bennett Decl., ¶4, 5.)

27.     Thus, Defendant ROADSAFE TRAFFIC SYSTEMS, INC. is a citizen of Delaware and Illinois.

28.     "For purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441 (b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only the named defendants are considered.) Therefore, Plaintiff's inclusion of DOES 1 through 20 in the Complaint is inapposite to the issue of diversity or removal.

29.     Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is and was, at all times relevant to this action, a citizen of the State of Nevada, and Defendant is and was, at all times relevant to this action, a citizen of the States of Delaware and Illinois. Therefore, complete diversity between Plaintiff and Defendant exists now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendant and the putative class.

///

///

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

C.    **The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)**

30.    Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. See, 28 U.S.C. §1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id.* § 1332(d)(6).

31.    Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residency Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Arias*, supra, at 922 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, to satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, supra, at 925; see also *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Arias, supra*, at 927. (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of

1    attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in

2    controversy." *Arias*, supra, at 922. (emphasis added).

3         32.    Moreover, in assessing whether the amount in controversy requirement has been

4    satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury

5    will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran*

6    *Express., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan*

7    *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's

8    inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a

9    defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D.

10   Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

11        33.    Plaintiff alleges Defendant has consistent practices and policies in effect which

12   result in wage and hour violations. (Complaint, ¶¶21, 23, 24, 37, 42, 44, 45, 46.) However, Plaintiff

13   places no limitations on the frequency of the alleged violations in the Complaint.  Thus, it is

14   entirely reasonable for Defendant to assume up to a 100% violation rate for each of Plaintiff's

15   claims. See, e.g., *Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th

16   Cir. 2014); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where

17   plaintiff did not submit any evidence as to the violation rates, "assumption of a 100 percent

18   violation rate may have been reasonable based on the allegations in the Complaint," 25 which

19   "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a

20   policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-

21   00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have

22   logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations"

23   and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or

24   suggest an alternative violation rate on which the Court should rely.").

25        34.    Although Defendant categorically denies Plaintiff's claims have any merit,

26   whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if

27   Plaintiff were to prevail on his First through Ninth Causes of Action on behalf of the putative

28   classes, the requested monetary recovery would far exceed five million dollars ($5,000,000.00).

1      **1.      Plaintiff's overtime claim places $775,144.80 in controversy.**

2          35.    Plaintiff alleges Defendant had a policy and practice of failing to pay overtime.

3    (Complaint, ¶¶23-24, 37, 41-42, 44-46.)

4          36.    As the Complaint does not include any allegations limiting the number of overtime

5    hours worked or putative class members who suffered from the alleged violations, Defendant may

6    assume a 100 percent violation rate.  *Lewis*, 627 F.3d at 398-401; *Re*a, 742 F.3d at 1239; *Bryant*,

7    284 F. Supp. 3d at 1151.

8          37.    Plaintiff has alleged Defendant "had a uniform policy, practice and procedure of

9    willfully failing to pay" wages. [Complaint, ¶44; see also ¶¶45, 46 (stating Defendant had an

10   unlawful "uniform administration of corporate policy").

11         38.    In wage-and-hour class actions, generally, "the Ninth Circuit distinguishes

12   between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor

13   law violations." *Dobbs v. Wood Group PSN, Inc*., 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016)

14   (*citing LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1202 (9th Cir. 2015)). As to the former,

15   "it may be reasonable to assume a one hundred percent violation rate if the complaint

16   specifically alleges a 'uniform' practice and the plaintiff offers no competent evidence in

17   rebuttal to a defendant's showing." *Ogaz*, 2021 WL 2822401, at *5; *see also Ritenour v.*

18   *Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) (finding the

19   defendant's inference of 100 percent violation rate based on a "uniform policy" reasonable in

20   light of the plaintiffs failure to rebut the defendant's evidence supporting such rates.). *See Ogaz*

21   *v. Honeywell Intl, Inc.*, 2021 WL 2822401, at *5 (C.D. Cal. July 7, 2021) ("it may be reasonable to

22   assume a one hundred percent violation rate if the complaint specifically alleges a 'uniform'

23   practice and the plaintiff offers no competent evidence in rebuttal to a defendant's showing.").

24         39.    In addition to his allegation that Defendant had a "uniform" policy of failing to

25   pay wages, Plaintiff also alleged that Defendant pursued systematic and intentional "policies,"

26   "patterns of conduct," and  "practices" to deprive employees of overtime wages. (Complaint

27   ¶21, 24, 42, 44, 45, 46). Separate and in addition to Plaintiff's allegation of a "uniform" policy,

28   these allegations also warrant 100 percent violation rates. *See, e.g., Mendoza,* 2022 U.S. Dist.

LEXIS 167940, at *12-13 ("Plaintiffs' allegation of a policy and practice implies greater frequency than an allegation of a pattern and practice, as policies tend to be uniformly applied.") (quoting Wheatley, 2019 U.S. Dist. LEXIS 26201, at *15-16); *Mackall*, 2016 U.S. Dist. LEXIS 119292, at *16-19; Mejia, 2015 U.S. Dist. LEXIS 67212, at *4; *Andrade v. Beacon Sales Acquisition, Inc.,* No. CV 19-06963-CJC (RAOx)) 2019 U.S. Dist. LEXIS 171460, at *10-13 (C.D. Cal. Oct. 1, 2019) (holding that allegations that defendants committed wage violations "as [a] matter[] of policy and/or practice" justified assumption of maximum violation rate and wages owed when calculating amount of controversy); *Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *1-17 (C.D. Cal. Sep. 16, 2022)(5 hours of overtime and minimum wages per week properly assumed based on allegations of a "systematic, company-wide policy and practice" of violating the Labor Code).

40.    Courts have repeatedly found a 100 percent assumed violation rate to be reasonable, where — as here — plaintiff alleges violations occurring as a "policy" and "practice". *See, e.g., Mackall v. Healthsource Global Staffing In*c., No. 16-cv-03810-WHO, 2016 U.S. Dist. LEXIS 119292, at *17-18 (N.D. Cal. Sept. 2, 2016); *Sanchez v. Russell Sigler, Inc.,* No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. LEXIS 55667, at *16-17 (C.D. Cal. Apr. 28, 2015); *Yocupicio v. PAE Grp., LLC*, No. CV 14-8958-GW(JEMx), 2014 U.S. Dist. LEXIS 178723, at *23-24 (C.D. Cal. Dec. 29, 2014), rev'd and remanded on other grounds, 795 F.3d 1057 (9th Cir. 2015); *Mejia v. DHL Express* (USA), Inc., No. CV 15-890-GHK (JCx), 2015 U.S. Dist. LEXIS 67212, at *4 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.")). As such, Plaintiff's allegations easily support two (2) hours of unpaid overtime per week.

41.    Defendant only assumed two hours per week of overtime pay. See *Mendoza v. Savage Servs. Corp.,* No. 2:19;CV-00122-RGK-MAA, 2019 WL 1260629 at *2 (C.D. Cal. Mar. 19, 2019) (finding that one hour of unpaid overtime per week was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that "a conservative 20%

violation rate, or one hour of overtime pay per week, to be reasonable" and citing cases); *see also Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822 (C.D. Cal. Dec. 7, 2017)(holding that two hours of unpaid overtime per week was reasonable when "almost no allegations concerning the frequency of the alleged violations, and [Plaintiff] provides no competing evidence that would suggest lower violation rates") And yet, a 100 percent violation rate is fully supported by Plaintiff's allegations of a "uniform" "policies" of failing to pay all wages.

42.    Plaintiff also alleges the failure to pay overtime constitutes an unlawful and unfair business practice over businesses that routinely adhere to the strictures of the Labor Code. (Complaint ¶¶ 20-35.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for overtime claims is based on a four (4) year limitations period.

43.    Angela Izuel, an economist and Director of Stout Risius Ross, analyzed the business records of Defendant for the putative class members from September 12, 2019 to September 15, 2023 (putative class members). (Izuel Decl., ¶¶10-15.) In doing so, Izuel determined the average class weighted average base wage rate for the putative class members and assumed two (2) unpaid hours of overtime per week (only a 40% violation rate) for the putative class members to calculate the amount in controversy for this claim. (Izuel Decl. ¶¶24-27.)

44.    Based on a conservative estimate of two (2) unpaid hours of overtime worked per week, the amount placed in controversy by Plaintiff's allegations is $755,144.80. (*Id.* ¶¶ 27.)

45.    A reasonable reading of Plaintiff's unpaid overtime allegations (Complaint, ¶¶23-24, 37-46.) supports Defendant's conservative assumption that the Complaint places in controversy at the very least two (2) hours of unpaid overtime per class member per workweek. *Stanley, supra*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Here, as in *Stanley, supra*, a 40 percent

1  violation rate, i.e. two (2) hours of overtime per week, is reasonable because Plaintiff alleges a

2  pattern and practice of violations and no contrary evidence showing otherwise exists.

3        **2.**      **Plaintiff's meal period claim places $580,244.20 in controversy.**

4       46.     Plaintiff allege Defendant had a policy and practice of failing to provide compliant

5  meal periods. (Complaint, ¶¶20-22, 29-31, 60-64.)

6       47.     Defendant denies any such violations occurred or that compensation is owed to

7  Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and

8  the putative class members were allegedly denied meal break periods.

9       48.     For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's

10  allegation that violations regularly occurred and compensation is owed. *Lewis v. Verizon*

11  *Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("in determining the amount [in controversy],

12  we first look to the complaint."); *Heejin Lim v. Helio, LLC*, 2012 WL 359304, at *2 (C.D. Cal. Feb.

13  2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's

14  complaint or other papers, not what the defendant will actually owe for the actual number of

15  violations that occurred, if any.") (citations omitted).

16       49.     Under California law, employees who are denied the opportunity to take proper

17  meal periods are entitled to one (1) hour of premium pay for each day that a meal period is missed,

18  late, or interrupted. *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, at *7 (C.D. Cal.

19  2009). Meal period claims are properly considered in determining the amount in controversy.

20  *Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. 2007).

21       50.     Plaintiff also alleges the failure to provide meal periods constitutes an unlawful and

22  unfair business practice over businesses that routinely adhere to the strictures of the Labor Code.

23  (Complaint ¶¶ 29-31.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof.

24  Code § 17208. Accordingly, the measure of potential damages for meal break claims is based on a

25  four (4) year limitations period.

26       51.     As the Complaint does not include any allegations limiting the number of alleged

27  meal period violations, Defendant may assume a 100 percent violation rate. *Lewis*, 627 F.3d at 398-

28  401; Rea, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151.

52.     Courts have permitted assumptions of 60 percent violation rates with allegations of a company-wide practice of failing to provide compliant meal breaks, along with no allegations concerning the frequency of the violations. See, *Sanchez*, 2021 WL 2679057, at *4–5 (finding a 60 percent violation rate for meal and rest break claims to be appropriate based on the complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding a complaint alleging a policy and practice of meal and rest period violations with no guidance as to the frequency justifies an estimate of at least three (3) missed meal periods and three (3) missed rest periods per week and up to five (5) missed meal periods and five (5) missed rest periods per week); *Stanley*, 2017 WL 6209822, at *2 (finding assumption of three (3) violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three (3) weekly meal violations reasonable where the plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated"); *Alvarez v. Office Depot, Inc.,* 2017 WL 5952181 (C.D. Cal. November 30, 2019)(finding that a 60 percent violation rate is reasonable when the Complaint alleges a "uniform" "practice" of meal period violations); *Kincaid v. Educational Credit Management Corporation*, 2022 WL 597158 (E.D. Cal. February 24, 2022)(holding that a 20 to 60 percent violation rate for meal periods is reasonable).

53.     Thus, Defendant's assumption of a 60 percent violation rate is *de jure* reasonable and consistent with the authority cite hereinabove. Defendant is not "required to comb through its records to identify and calculate the exact frequency of violations," *Rodriguez v. USF Reddaway, Inc.*, No. 2:21-cv-02270-TLN-DB, 2022 WL 3274345, at *5 (E.D. Cal. Aug. 11, 2022) (noting courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations). "[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." *Thomas v. Aetna Health of California, Inc.*, No. 1:10-CV-01906-AWI, 2011 WL 2173715, at *20 (E.D. Cal. Jun. 2,

1   2011), report and recommendation adopted sub nom., 2011 WL 13240291 (Aug. 31, 2011)

2   (citations omitted).

3       54.     To calculate the amount in controversy for the meal period claim, Izuel analyzed the

4   business records of Defendant for the putative class members and assumed a potential exposure

5   rate of 60 percent of the shifts worked that were greater than five (5) hours, multiplied the number

6   of shifts worked of more than five (5) hours by the potential violation rate and rounded up to the

7   next whole number.  (Izuel Decl., ¶¶ 18.) Izuel utilized a weighted average hourly base rate paid to

8   Plaintiffs in the amount of $19.90 per hour in calculating the potential exposure. (Izuel Decl., ¶19.)

9       55.     Based on a conservative estimate of a 60 percent violation rate, the amount placed

10   in controversy by Plaintiff's allegations is $580,244.20. (Izuel Decl., ¶20.)

11       **3.     Plaintiff's rest break claim places $614,332.90 in controversy.**

12       56.     Plaintiff alleges Defendant had a policy and practice of failing to provide compliant

13   rest breaks.  (Complaint, ¶¶29-31, 66-70.)

14       57.     Defendant denies any such violations occurred or that compensation is owed to

15   Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and

16   the putative class members were allegedly denied rest break periods.

17       58.     For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's

18   allegation that violations regularly occurred and compensation is owed. *Lewis*, supra, at 399; *Lim*,

19   supra, at *2.

20       59.     Under California law, employees who are denied the opportunity to take proper rest

21   periods are entitled to one (1) hour of premium pay for each day that a rest period is missed or

22   interrupted. *Marlo*, supra, at *7 (C.D. Cal. 2009). Rest period claims are properly considered in

23   determining the amount in controversy. *Muniz*, supra, at *4.

24       60.     Plaintiff also alleges the failure to provide rest periods constitutes an unlawful and

25   unfair business practice over businesses that routinely adhere to the strictures of the Labor Code.

26   (Complaint ¶¶ 29-31.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof.

27   Code § 17208. Accordingly, the measure of potential damages for rest break claims is based on a

28   four (4) year limitations period.

61.     As the Complaint does not include any allegations limiting the number of alleged rest break violations, Defendant may assume a 100 percent violation rate. *Lewis*, 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151.

62.     To calculate the amount in controversy for the rest period claim, Izuel analyzed the business records of Defendant for the putative class members and assumed a potential exposure rate of only 60 percent of shifts worked that are greater than or equal to three and one-half (3.5) hours. (Izuel Decl. ¶¶ 21-23.) For each putative class member, Izuel multiplied the number of shifts worked of more than three and one-half (3.5) hours by the potential violation rate and rounded up to the next whole number. (*Id.*)

63.     Based on a conservative estimate of a 60 percent violation rate for rest breaks, the amount placed in controversy by Plaintiff's allegations is $614,332.90. (Izuel Decl., ¶¶ 23.)

64.     Courts have permitted a 60 percent violation rate, with allegations of a company-wide practice of failing to provide compliant rest breaks, along with no allegations concerning the frequency of the violations.  See *Sanchez*, 2021 WL 2679057, at *4–5; *Bryant*, 284 F. Supp. 3d at 1151; *Stanley,* 2017 WL 6209822; *Alvarez*, 2017 WL5952181 (finding a 60 percent violation rate reasonable when the Complaint alleges a uniform practice of rest period violations); *Kincaid,* 2022 WL 597118 (stating a 60 percent rest period violation rate is reasonable).  Thus, Defendant's assumptions are more than reasonable.

### 4.     Plaintiff's failure to timely pay claim places $1,506,972.08 in controversy.

65.     Plaintiff also seeks penalties for alleged failure to pay in a timely manner pursuant to Labor Code §204. (Complaint, ¶¶25-28, 36-46.)  All wages earned in employment are due and payable twice during each calendar months on dates designated in advance by the employer. (Labor Code §204.)

66.     When (as here) the plaintiff has alleged that his employer has a policy and practice or systematic pattern of violations, courts have found it reasonable to assume that "each putative class member suffered at least one (1) violation during any given pay period" and that the subsequent violation amount can properly be included as part of the amount in

controversy calculation. *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892 at *4 (C.D. Cal. 2021); *see McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870 at *7-8 (C.D. Cal. 2022) (where plaintiff alleged a systemic pattern of violations and Defendant willfully failed to pay wages, the Court accepted the subsequent violation calculation), *Cruz v. Mohawk Industries, Inc.*, 2022 WL 93338 at *5 (E.D. Cal. 2022) (where plaintiff alleged failure to timely pay overtime wages, minimum wages, and meal and rest break premiums, Defendant assumed subsequent violation rates, Plaintiff offered no contrary figures, and Court accepted the calculation including subsequent violation penalties).

67.     Moreover, even if the Court declines to apply the higher subsequent violation penalty, the $200 rate (plus the 25 percent amounts) should be applied here based on Plaintiff's allegations of willful and intentional violations by the Defendant. The allegations in the Complaint fully support an amount in controversy that is more than Defendant originally proffered. Section 210 of the Labor Code states that the penalties shall be awarded as follows: "(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, **or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."** California Labor Code section 210(b)(emphasis added). Here, Plaintiff repeatedly alleges that Defendant "willfully" and "intentionally" pursued a "uniform" and "systematic" policy to deprive employees of timely wages. (Complaint, ¶¶37-44). Because Plaintiff has alleged that Defendant willfully and intentionally failed to pay employees their timely wages, the $200 rate should apply to all alleged violations, as well as 25 percent of the amount that was allegedly unlawfully withheld.

68.     To calculate the amount in controversy for the failure to timely pay wages claim, Izuel identified putative class members who were provided a wage statement from September 12, 2022 through September 15, 2023, and assigned a penalty of $100 for the first pay period and $200 for each subsequent pay period with an additional penalty of 25 percent for all wages owed under the 204/201 statutory penalty violations. (Izuel Decl. ¶¶ 35-36.) Based on Plaintiff's allegations,

the amount in controversy on the alleged failure to pay in a timely manner is $1,506,972.08. (Izuel Decl. ¶37.)

**4.    Plaintiff's business expense claim places $71,180.00 in controversy.**

69.    Plaintiff alleges Defendant failed to reimburse or indemnify necessary business expenses incurred by Plaintiff and the putative class. (Complaint, ¶34-35, 72-74.)

70.    A review of Defendant's business records confirms the putative class members were employed and working for an aggregate of 3,559 months in the putative class period. (Izuel Decl. ¶29.)

71.    Based upon a conservative assumption of $20 per month of business expenses incurred but not reimbursed, this claim places $71,180.00 in controversy. (Izuel Decl. ¶29-20.)

**5.    Plaintiff's wage statement claim places $511,000.00 in controversy.**

72.    Plaintiff alleges Defendant's alleged failure to provide compliant wage statements to Plaintiff and the putative classes was accomplished "knowingly and intentionally" in violation of Labor Code section 226 and seeks penalties under that statute. (Complaint, ¶¶56-58.)

73.    Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

74.    To calculate the amount in controversy for the wage statement claim, Izuel identified putative class members who were provided a wage statement from September 12, 2022 to September 15, 2023, assigned a penalty of $50 for the first pay period and $100 for each subsequent pay period and limited each putative class member's penalty to $4,000.  (Izuel Decl., ¶¶33-34.)

75.    Plaintiff's claim for wage statement penalties is wholly derivative of his claims for overtime and meal and rest period violations. As such, it puts at issue every wage statement for every pay period during the one-year statutory period from September 12, 2022 to September 15,

2023.  See, e.g., *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100 percent assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)).

76.     Based on Plaintiff's allegations, the amount placed in controversy by Plaintiff's allegations on the wage statement claim is $511,000.00.  (Izuel Decl. ¶ 34.)

### 4.     Plaintiff's waiting time claim places $1,146,240.00 in controversy

77.     Plaintiff alleges Defendant had a practice of knowingly refusing to pay all final wages owed to putative class members and that they are entitled to waiting time penalties pursuant to Labor Code section 203.  (Complaint, ¶¶25-28, 48-50.)

78.     If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code section 201, or within 72 hours after resignation, as required by Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced," for up to a maximum of 30 calendar days. *Id.* § 203. An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520.

79.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages. See *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative

class members." *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); see also *Crummie v. CertifiedSafety, Inc.*, No. 17 cv 03892 RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

80.     Defendant denies any such penalties are owed to Plaintiff or any putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the penalties are owed.  Plaintiff's claim is derivative of his minimum wage, overtime, and meal and rest penalty claims, which Plaintiff alleges were "willfully" withheld by Defendant (Complaint, ¶24, 41, 44, 45.)

81.     Based on Plaintiff's allegations, it is reasonable to assume that 100 percent of the former, non-exempt employees (in the three-year section 203 limitations period) are entitled to thirty (30) days' wages. See *Crummie*, 2017 WL 4544747, at *3 (upholding assumption that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (finding that an assumption of the maximum thirty-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due."); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days, ... it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile*, LLC, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same).) *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob.*

*Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties). In fact, the Complaint specifically states, "**all** employees who have been separated from Defendants did not timely receive a final paycheck." [Complaint, ¶27 (emphasis added.)] Thus, Defendant appropriately calculates potential waiting time penalties using a 100 percent violation rate.

82.     Thus, to calculate the amount in controversy for the waiting time penalty claim, Izuel analyzed the business records of Defendant for the putative class members to determine the number of former employees in the putative class. (Izuel Decl. ¶¶ 8, 31.) Izuel assumed each putative class member worked eight (8) hours per day. (Izuel Decl. ¶31.) She then calculated thirty (30) days wages at the average wage rate paid to employees. (*Id.*)

83.     Based on Plaintiff's allegations, the amount in controversy on the waiting time penalty claim is $1,146,240.00. (*Id.* ¶32.)

**5.     Potential future attorney's fees in controversy total $1,301,278.50.**

84.     Plaintiff explicitly seeks attorneys' fees should he recover for any of the claims in this action. (See Complaint, ¶¶38, 45, 58, 74, and Prayer for Relief section.) Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. See *Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938 IEG JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (quoting *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25 percent benchmark in CAFA wage and hour cases).

85.    Defendant has established the total amount in controversy, exclusive of attorneys' fees is $5,205,113.98.  (Izuel Decl., ¶38.) Plaintiff has not indicated he will seek less than twenty-five (25) percent of a common fund in attorneys' fees. In fact, Plaintiff's counsel routinely seeks attorney's fees in the amount of thirty-three percent. See Request for Judicial Notice filed concurrently herewith. As such, Defendant's assumption of twenty-five (25) percent is reasonable.

86.    Defendant denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the attorneys' fees are owed.  Given the valuation of this matter, the attorneys' fees portion is valued at $1,301,278.50, and also supports this removal. (Izuel Decl. ¶39.)

**6.    The Amount in Controversy Far Exceeds $5,000,000**

The total amount placed in controversy is summarized as follows:

| Claim | Amount in Controversy |
|---|---|
| Overtime | $775,144.80 |
| Meal breaks | $580,244.20 |
| Rest breaks | $614,332.90 |
| Wage statements | $511,000.00 |
| Failure to Pay In Timely Manner | $1,506,972.08 |
| Failure to Pay All Wages at Termination | $1,146,240.00 |
| Unpaid Business Expenses | $71,180.00 |
| | |
| Total Placed in Controversy by Claims | $5,205,113.98 |
| Attorney's fees at 25% | $1,301,278.50 |
| Total, inclusive of attorney's fees | **$6,506,392.48** |

87.    Plaintiff's allegations therefore place more than the requisite five million dollars ($5,000,000) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

**III.    DEFENDANT HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. §1446**

88.    In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, County of Alameda, is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

89.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant are attached hereto as **Exhibit A.**

90.    In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Alameda County Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

91.    As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently files its Certificate of Interested Parties with this filing of the Notice of Removal.

**IV.    CONCLUSION**

92.    For the foregoing reasons, Defendant hereby removes the above-entitled action to the United States District Court for the Northern District of California.

93.    In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED:  November 6, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Alexandra M. Asterlin
　　　Michael J. Nader
　　　Alexandra Asterlin
　　　Paul M. Smith

Attorneys for Defendant
ROADSAFE TRAFFIC SYSTEMS, INC.

## PROOF OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made.  My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814. My email address is: noreen.witt@ogletree.com.

On November 6, 2023, I served the following document(s):

**DEFENDANT ROADSAFE TRAFFIC SYSTEMS, INC.'S NOTICE OF REMOVAL OF STATE COURT ACTION TO FEDERAL COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

| | |
|---|---|
| Aaron A. Bartz | Attorneys for Plaintiff |
| BARTZ LAW GROUP, APC | VINCENT TURNER |
| 5151 California Avenue, Suite 100 | |
| Irvine, California  92617 | |
| Telephone:    (949) 504-4413 | |
| Facsimile:    (949) 656-7760 | |
| Email:    aaron@bartzlawgroup.com | |

☒    **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒    (Federal)    I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 6, 2023, at Sacramento, California.

*Noreen F. Witt*

NOREEN F. WITT